IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MELVIN GARCIA   # 01403-748                                          PLAINTIFF

VS.                                          CIVIL ACTION: 1:17cv26-LG-RHW

FLOYD SPOTTS, *et al*.                                          DEFENDANTS

## REPORT AND RECOMMENDATION

This *pro se* prisoner civil rights lawsuit is before the Court on [67] a motion for summary

judgment filed February 25, 2019 by Defendants Floyd Spotts and Kerwin Blount, and joined in

by Defendant Richard W. Woodard on March 12, 2019.   [71]   Movants assert they are entitled

to summary judgment due to Plaintiff's failure to exhaust administrative remedies prior to filing

suit.   Plaintiff was granted additional time to respond and filed his response April 18, 2019.

[73]   Movants replied on April 25, 2019, and the matter is now ripe for ruling.   [75]

Facts and Procedural History

Melvin Garcia is a federal inmate presently incarcerated in the Federal Correctional

Institution in Fairton, NJ, serving sentences for convictions of conspiracy.   The Bureau of

Prisons (BOP) website indicates his release date is December 20, 2024.   Garcia was at the

United States Penitentiary in Terre Haute, IN when he filed this lawsuit on February 1, 2017

complaining of events which occurred June 16-17, 2015, and July 14, 2015 while he was housed

at South Mississippi Correctional Institution (SMCI) in Leakesville, MS.   At all times pertinent

to this lawsuit, Defendants were MDOC employees at SMCI.

In his complaint, Garcia states that on June 16, 2015, he got in a confrontation with

inmate Tarakus Lee who refused to deliver some tobacco for which Garcia had paid Lee $150.

At the time, Garcia was housed in Area 1, Unit 7 A Zone which is protective custody.   Lee was

housed in B Zone on the other side but was in the hallway of Garcia's unit.   Garcia testified

inmates from Zones A and B are separated and not allowed to interact with one another and that

the officer in the security booth has control of the doors into the respective zones.   Lee was

working as an orderly cleaning in the sallyport, and Woodard was watching him.   [67-1, pp.

19-20]   Garcia alleges Officer Woodard "became aware" of the argument between Garcia and

Lee, and that Woodard was also aware that Lee had a piece of steel rebar.   According to Garcia,

at Lee's direction, Woodard had the A Zone door opened which allowed Lee into A Zone where

he immediately hit Garcia with the rebar in the eye, causing Garcia "severe and lasting physical,

psychological and emotional injuries/damages."   Other inmates, including Paul Villanueva,

intervened.   Lee hit Villanueva in the jaw with the rebar.   The inmates disarmed Lee, and

exchanged punches with him until Woodard got control of the situation, removed Lee from A

Zone and ordered the other inmates, including Garcia back to their cells.   Woodard reported that

during the melee Garcia struck him (Woodard) in the head.

Captain Spotts, Officer Blount and another officer soon came to Garcia's cell.   Spotts

yelled at Garcia for hitting one of his officers, ordered him to strip naked for a search, then

ordered Blount to handcuff Garcia behind his back and had Garcia kneel on the floor.   Spotts

then ordered the control tower to open Garcia's cell, entered the cell and grabbed Garcia by the

throat and poked his finger into Garcia's bloody face, telling him he (Spotts) was going to deal

with him.   Garcia alleges Spotts dragged him from his cell while Blount and the other officer

brought inmate Villanueva from his cell.   Both inmates were taken to the captain's office where

Spotts ordered Garcia's handcuffs removed, then assaulted Garcia.   Garcia alleges he raised his

hands to protect his face and Spotts screamed at him for swinging and punched Garcia in the

face.   Garcia claims Blount joined in, punching him in the face, yelling at him to stop fighting

back, and hitting Garcia in the head with his radio. When Garcia fell to the floor, Spotts and

Blount continued the assault by kicking him in the face and body.   They then handcuffed Garcia

again and took him and Villanueva to the medical department.   Garcia alleges he sat there,

handcuffed, for approximately seven hours before anyone examined him.   Ultimately, he

required stitches to his left eye and metal staples to the top of his head.   Garcia states he still has

impaired vision in his left eye as a result of his injuries, and has recurring nightmares, panic

attacks and anxiety disorder because of the incident.   [1]   Garcia was issued Rules Violation

Reports (RVRs) for the incident, for striking Woodard, for hitting Lee with a metal rod, and for

striking Captain Spotts with a closed fist.   He was found guilty on all three RVRs and punished

with suspension of visitation and commissary privileges.   [67-2], [67-3], [67-4]   Garcia did not

appeal the RVR convictions.   [67-1, p. 22]

On July 14, 2015, Garcia had a disciplinary hearing on the RVRs before Sgt. Angela

Stockstill,[1]   During the hearing, Stockstill had Garcia step outside the office and closed the door.

Garcia's pleadings state Sumrall was the security officer that day.   Garcia heard the door to B

area open and Lee rushed forward and began hitting Garcia over the head and body with a food

tray.   Stockstill and another female officer came out of the office and pepper-sprayed Garcia and

Lee as they fought.   Garcia believes Stockstill was retaliating against him because her sister,

who is also an officer at SMCI, is in a relationship with Spotts, and Garcia had told investigators

Spotts and Blount beat him.   Garcia states he tried to write this up but two weeks later they sent

him back to the BOP.   [1], [2], [3]

---

1 Stockstill no longer works at MDOC; the docket indicates she was served [31], but to date she has neither answered nor appeared.

Defendants Spotts, Blount and Sumrall moved for summary judgment March 12, 2018 on

grounds of Eleventh Amendment immunity, state law immunity and qualified immunity.   The

undersigned issued [52] a Report and Recommendation on September 24, 2018, which the

District Judge adopted on December 18, 2018, dismissing the case as to Defendant Sumrall

pursuant to qualified immunity, and dismissing all official capacity claims and state law claims

against Spotts, Sumrall and Blount on grounds of sovereign immunity and state law immunity.

[47], [52], [56]   Sumrall was terminated from the case pursuant to Order [56].

On February 6, 2019, the undersigned conducted a tele-video screening/omnibus hearing.

In accordance with Garcia's agreement during the hearing, the undersigned substituted Richard

W. Woodard as Defendant in the place of Danny Woodard and Unknown Hubbard who were

terminated as parties.   [62], [67-1, pp. 8-10]   Garcia testified he was not aware that he had to

exhaust administrative remedies before filing suit; that he was not really familiar with the MDOC

administrative remedy program, but "in the beginning of this incident, [he] was told that [he]

needed to begin the administrative remedy."   He testified he tried to write up the issue and

submitted an ARP on June 26, 2015, but it was rejected both initially and on his re-submission of

the grievance (he does not recall why it was rejected the second time), then he was shipped back

to the BOP.   Since that time Garcia has admittedly filed no grievances or ARPs with MDOC,

nor any additional ARP regarding the alleged assault by Spotts and Blount.   [67-1, pp. 13-17],

[67-5]   Garcia signed his complaint in this lawsuit on January 12, 2017, and it was filed by the

Clerk on February 1, 2017.

Spotts, Blount and Woodard seek summary judgment on grounds that Garcia failed to

exhaust administrative remedies before filing suit, and present as exhibits in support of their

motion the hearing transcript, the RVRs issued, and ARP grievance SMCI-15-1251 filed by

Garcia and rejected by the ARP department.

### Summary Judgment Standard

Summary judgment is required "if the movant shows there is no genuine dispute as to any

material fact and that the movant is entitled to a judgment as a matter of law."    FED.R.CIV.P. 56.

Material facts are those which affect the outcome of the suit under governing law; a genuine

dispute exists when the evidence is such that a reasonable jury could return a verdict for the

non-movant.    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).    On a motion for

summary judgment, the Court views the evidence and draws reasonable inferences most

favorably to the non-moving party, but the burden of proof is on the party who has the burden of

proof at trial.    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Abarca v. Metropolitan*

*Transit Authority,* 404 F.3d 938, 940 (5th Cir. 2005).    Movants must identify those portions of

pleadings and discovery on file and any affidavits which they believe demonstrate the absence of

a genuine issue of material fact.    When the moving parties have carried their burden, the

non-movant must set forth specific facts showing there is a genuine issue for trial by either

submitting opposing evidentiary documents or referring to evidentiary documents already in the

record which demonstrate the existence of a genuine issue of material fact.    *Celotex*, 477 U.S. at

324-325; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Reese v. Anderson*, 926

F.2d 494, 498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir.

1986) (non-movant "must counter factual allegations by the moving party with specific, factual

disputes; mere general allegations are not a sufficient  response"); *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-movant "must do more than simply show

that there is some metaphysical doubt as to the material facts"). Conclusory allegations,

unsubstantiated assertions or the presence of a scintilla of evidence, do not suffice to create a real

controversy regarding material facts.    *Lujan v. National Wildlife Federation*, 497 U.S. 871,

888-89 (1990); *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A.,*

*Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

<u>Law and Analysis</u>

A plaintiff in a § 1983 action must show he has been deprived of a right secured by the

Constitution or federal law, by a person acting under color of state law.    *Flagg Brothers, Inc. v.*

*Brooks*, 436 U.S. 149, 155 (1978).    The complaint must state "specific facts, not simply legal

and constitutional conclusions;" conclusory allegations are insufficient.    *Fee v. Herndon*, 900

F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990); *Jaquez v. Procunier,* 801 F.2d 789,

793 (5th Cir. 1986).    Plaintiff must show the alleged constitutional or statutory deprivation was

intentional or due to deliberate indifference.    *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994).

The Prison Litigation Reform Act of 1995 (PLRA) requires that, before filing a § 1983

lawsuit in federal court, a prisoner must exhaust administrative remedies:    The statute provides:

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a) (Supp. 2000).    Exhaustion is required before an inmate brings an action

with respect to prison conditions, regardless of the relief offered through administrative

procedures.    *Booth v. Churner*, 532 U.S. 731, 739 (2001).    The United States Supreme Court

has explained that the PLRA's exhaustion requirement is mandatory and applies to all inmate

suits about prison life, whether they involve general circumstances or particular episodes.    See

*Porter v. Nussle*, 534 U.S. 516, 532 (2002); see also *Jones v. Bock*, 549 U.S. 199, 204 (2007)

(reaffirming that exhaustion is mandatory).   The Fifth Circuit Court of Appeals reiterated these

principles in *Gonzales v. Seal*, 702 F.3d 785 (5th Cir. 2012), recognizing that "pre-filing

exhaustion of prison grievance processes is mandatory."   *Id.* at 788.   Proper exhaustion is

required and is not accomplished "by filing an untimely or otherwise procedurally defective

administrative grievance or appeal."   *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).   An

inmate's grievance must be sufficiently specific to afford "officials a fair opportunity to address

the problem that will later form the basis of the lawsuit."   *Johnson v. Johnson*, 385 F.3d 503,

517 (5th Cir. 2004).   "It is not enough to merely initiate the grievance process or to put prison

officials on notice of a complaint; the grievance process must be carried through to its

conclusion."   *Walker v. East Miss. Corr. Facility*, 2013 WL 4833901, *2 (S.D. Miss. Sept. 11,

2013) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)); *Tompkins v. Holman*,

2013 WL 1305580 (S.D. Miss. Mar. 26, 2013).

The MDOC has an Administrative Remedy Program (ARP) to address prisoners'

grievances related to their incarceration.   Initially a three-step process, the procedure was

reduced to two steps in 2010.   *Threadgill v. Moore*, 2011 WL 4388832, at *3 n.6 (S.D. Miss.

July 25, 2011).   The ARP is set out in Chapter VIII of the Inmate Handbook, Miss. Dep't of

Corrections (2016).   First, an inmate must send a written request to the ARP within 30 days of

the incident of which he complains.   The request is screened, and if it meets specified criteria it

is accepted into the ARP and proceeds to the first step.   At the first step, a prison official

responds to the request on Form ARP-2.   On this form, the inmate can indicate if he is

dissatisfied with the first step response by stating the reason he is not satisfied, whereupon the

ARP process continues to the second step, to which a prison official again responds.   If the

inmate remains dissatisfied with the second step response, he may file a lawsuit.

Although Garcia testified he was unfamiliar with the ARP process, and unaware that he

needed to exhaust administrative remedies before filing suit, he also testified he was told he

"needed to begin the administrative remedy," and in fact, he submitted an ARP regarding his

allegations against Defendants on June 26, 2015, requesting that Blount be terminated or be kept

away from him, that the officers be disciplined, and that an affidavit for assault and battery be

filed against Spotts and Blount.   As to Woodard, Garcia's ARP stated only that he was "the

officer intervening in the conflict between Inmate Lee, Garcia…," and requested no relief against

Woodard.   The ARP department rejected Garcia's ARP on July 2, 2015, with this explanation:

> The filing of assault and battery charges are (*sic*) a criminal matter.   Neither
> the ARP nor the MDOC has the authority to do this.   Criminal charges can
> only be filed by the district attorney where the incidents occurred.

[67-5]   Garcia stated he re-submitted his grievance, which was again denied although he does

not recall why.   After being returned to the BOP, Garcia admittedly filed no ARPs with the

MDOC, nor attempted to file any additional ARPs regarding the 2015 incident.

Garcia's response [73] to Defendants' motion urges summary judgment is premature

because he has not been allowed to conduct discovery which he contends "is needed to show in

fact that the administrative remedy procedure at SMCI operated as a simple 'Dead End.'"

Having accepted as true Garcia's claim that prior to filing this lawsuit he never received copies of

the MDOC inmate handbook, any post-transfer remedy procedures, investigation results, or

grievance forms, the undersigned is unpersuaded by his contention that he could not adequately

respond to the Defendants' motion without discovery to obtain copies of them.   Garcia has been

on notice since Defendants first answered his lawsuit on July 26, 2017, that Defendants asserted

his complaint "is subject to the exhaustion of administrative remedies requirement of 42 U.S.C. §

1997(e)," and his lawsuit is barred if he failed to comply with the requirement.   [28]   In a

March 27, 2018 pleading he stated he "exhausted his remedies when he was transferred to FCI –

Fair."   [50]   Garcia acknowledges ignorance of prison grievance procedures does not excuse

non-compliance.   Although he complains that after he was transferred back to the federal

penitentiary in Indiana, MDOC/SMCI gave him no instructions on how to file a post-transfer

remedy, he does not allege he ever asked MDOC for such instructions, nor does he identify any

misrepresentation or impediment by the MDOC which prevented him from filing a proper ARP.

The remainder of his response is essentially a repetition of the allegations of his complaint and

prior pleadings.

There is no dispute that the MDOC has an administrative grievance procedure in effect,

or that Garcia filed a request for administrative remedy which was rejected with an explanation

for the rejection.   The Court accepts as true for purposes of this motion Garcia's statement that

he re-submitted the ARP and it was again denied/rejected, although there is no documentary

evidence of re-submission and Garcia testified he did not recall why it was rejected the second

time.   No evidence indicates Garcia ever filed a corrected ARP, or completed the ARP process.

Relying on *Ross v. Blake*, 136 S.Ct. 1850 (2016), Garcia urges exhaustion was not

required because the MDOC ARP process was "unavailable" to him.   *Ross* points out that the

statute requires an inmate to exhaust only available remedies -- defining available as "capable of

use for the accomplishment of a purpose" and identifying "three kinds of circumstances in which

an administrative remedy, although officially on the books, is not capable of use to obtain relief:"

(1) where the procedure "operates as a simple dead end—with officers unable or consistently

unwilling to provide any relief to aggrieved inmates;" (2) where the administrative scheme is "so

opaque that it becomes, practically speaking, incapable of use… some mechanism exists to

provide relief, but no ordinary prisoner can discern or navigate it;" and (3) when, "through

machination, misrepresentation or intimidation," prison administrators thwart inmates from using

the process.   *Id.*, 136 S.Ct. at 1859-1860; *Hinton v. Martin*, 742 F. App'x 14, 15 (5th Cir. 2018).

Citing *Manemann v. Garrett*, 484 F. App'x 857, 858 (5th Cir. 2012), Defendants counter

that lack of a copy of the inmate handbook does not render the ARP process unavailable.   The

undersigned agrees.   Ignorance of the exhaustion requirement does not excuse failure to exhaust.

*Gonzalez v. Crawford*, 419 F. App'x 522, 523 (5th Cir. 2011); *Palermo v. Miller*, 196 F. App'x

234, 235 (5th Cir. 2006).   Garcia admits he was told he needed to begin the administrative

remedy process by writing out his grievance, and he actually submitted the grievance to ARP on

June 26, 2015, which the ARP department promptly rejected July 2, 2015 explaining why it was

rejected.   No evidence has been presented that Garcia ever submitted a corrected ARP.   The

undersigned finds neither allegation nor showing the BOP or MDOC interfered with or prevented

Garcia's pursuing administrative remedies with the MDOC ARP process.   The undersigned is of

the opinion that the *Ross* factors are not met in Garcia's case, and his transfer to a different prison

does not render the ARP process unavailable or excuse his failure to exhaust administrative

remedies before filing suit as required by the PLRA.

## RECOMMENDATION

Based upon the foregoing, the undersigned finds Garcia failed to exhaust administrative

remedies prior to filing suit and recommends that Spotts, Blount and Woodard be granted

summary judgment and this case, dismissed as to them.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Following service of a Report and Recommendation (R&R), a party has 14 days to file

written objections to it.   The objecting party must specifically identify the findings, conclusions,

and recommendations to which he objects.   The District Court need not consider frivolous,

conclusive, or general objections.   Opposing parties have seven days from service of objections

to respond or to notify the District Judge they do not intend to respond to the objections.   Failure

to timely file objections precludes attack on appeal of any proposed factual finding or legal

conclusion accepted by the District Court, except on grounds of plain error.   *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

   Signed, this the 30th day of July 2019.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE